CENTRAL TRUST CO. OF NEW YORK v. MISSOURI, K. & T. RY. CO.

(District Court, E. D. Missouri, E. D. December 10, 1917.)

No. 4564.

1. RAILROADS ⬧152—BONDS—PLEDGE—RIGHTS OF TRUSTEE—HOLDER OF BONDS AS COLLATERAL.

The pledge by a railroad company with a trust company as trustee of its own bonds as security for an issue of short term notes did not give the trustee such interest in the general affairs of the railroad company as to entitle it to attack the validity of a subsequent pledge of other bonds of the same issue, not covered by the trust agreement, but which were free assets of the railroad company, to a bank as security for a bank loan and as additional security for certain of the short term notes held by the bank.

2. RAILROADS ⬧152—BONDS—PLEDGE—RIGHTS OF TRUSTEE—HOLDER OF BONDS AS COLLATERAL.

The fact that the bank, which already held the pledged bonds, in joining with other holders of notes in an agreement for their extension, did not inform the other assenting holders of its special security, was not a concealment which affected the validity of the renewed pledge as to the trustee.

In Equity. Suit by Central Trust Company of New York, as trustee, against Missouri, Kansas & Texas Railway Company. On motion by

⬧For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the Mercantile Trust Company, intervener, to strike out parts of the answer of complaint to its petition. Motion granted.

See, also, 246 Fed. 154.

Edward Cornell and Chas. E. Hotchkiss, both of New York City, and Edward C. Eliot, of St. Louis, Mo. (Davies, Auerbach & Cornell, of New York City, and Eliot, Chaplin, Blayney & Bedal, of St. Louis, Mo., of counsel), for complainant.

Samuel A. Mitchell and Edward J. White, both of St. Louis, Mo., for intervener.

HOOK, Circuit Judge. This is a motion by the Mercantile Trust Company to strike out parts of the answer of the plaintiff, Central Trust Company, to the petition of the former filed in this cause with leave of court. The petition of the Mercantile Trust Company sets forth the following:

On May 1, 1913, it acquired $578,000 of the so-called short time notes of the defendant Missouri, Kansas & Texas Railway Company, due May 1, 1915. These notes were part of an issue of $19,000,000 secured by collateral deposited with the plaintiff as trustee under a collateral trust agreement. On September 1, 1914, the Mercantile Trust Company also made an ordinary bank loan to the railway company on the note of the latter, secured by a pledge of $800,000 of its consolidated bonds. The last installment of this note became due at the same time as the short time notes. As part of this transaction it was agreed that the $800,000 of consolidated bonds should also be held by the Mercantile Trust Company as security for its $578,000 of short time notes. Shortly before the maturity of these obligations the railway company sought an extension for one year of its issue of short time notes with the consent of the various holders, and also a renewal of the bank loan of the Mercantile Trust Company. As an inducement to the former the railway company deposited with the plaintiff as trustee under an extension agreement additional collateral ($1,300,000 par value) for the further security of those holders of short time notes who assented to the extension. It also increased the interest rate from 5 to 6 per cent. The holders of $18,053,000 assented, and their original notes were stamped accordingly. The Mercantile Trust Company became a party to the extension, and also renewed the bank loan, but upon the condition, to which the railway company agreed, that the $800,000 of consolidated bonds above mentioned should be held as security for both debts as before. Afterwards, September 25, 1915, a receiver of the railway company was appointed. There is due the Mercantile Trust Company upon the short time notes $578,000, and upon the bank loan $128,375.43, with interest on both sums. The petition of the Mercantile Trust Company is mainly for the adjudication and enforcement of its liens.

[1] The sixteenth paragraph of plaintiff's answer avers that the agreement between the Mercantile Trust Company and the railway company that the former should hold the $800,000 of consolidated bonds as security for its short time notes was not communicated to the other holders of such notes who participated in the extension, but con-

stituted a secret agreement by which it obtained a security the others did not receive, and was a fraud upon them. This is the affirmative defense of the answer. The motion of the Mercantile Trust Company is to strike this paragraph, and also designated parts of preceding paragraphs, from the answer. At the argument, counsel for the plaintiff contended that these other parts were referable to the defense of the sixteenth paragraph and should not be taken independently. That construction will be adopted.

In approaching the principal question for decision, it should be observed that the capacity in which the plaintiff is now before the court is as trustee under the collateral trust agreement securing the $19,000,000 of short time notes and under the extension agreement covering the $18,053,000 of those notes that were extended. The $800,000 of consolidated bonds pledged to the Mercantile Trust Company are not embraced in or subject to either of those instruments. When pledged to the Mercantile Trust Company they were free assets of the railway company. The object of the plaintiff, as disclosed by its answer and brief, is not to exclude the Mercantile Trust Company from participation in the extension agreement and the additional collateral pledged in accordance therewith, but seems to be to deprive that company of the security of the $800,000 of consolidated bonds while holding it to its extension of its short time notes. Though the plaintiff was not a party to the transaction between the Mercantile Trust Company and the railway company, and has no lien upon the $800,000 of consolidated bonds, it claims a right to interpose upon two grounds. Inversely they are:

First. That the holders of all short time notes, after exhausting the collateral pledged to plaintiff as trustee, will be entitled to a deficiency judgment against the railway company, and that the general estate of that company responsive to such a judgment would be benefited by defeating the pledge of the $800,000 of consolidated bonds. But the interest of the plaintiff as trustee under the two trust agreements is too remote to support an attack upon detached transactions of the railway company affecting only its free assets. If it were otherwise, the mortgage or pledge of specific property of a railroad company for a specific debt would qualify the trustee to question every act of the company by which it created other debts or secured them with other property. Certainly the plaintiff would not wish to be charged with such duties. What individual creditors might do in a bankruptcy or other winding-up proceeding might be another question.

[2] Second. That the security for the entire amount of short time notes consists of consolidated bonds of the same issue as the $800,000 pledged to the Mercantile Trust Company, and the less such bonds outstanding the greater the value of those remaining. This does not seem to be greatly different from the ground first stated. The consolidated bonds deposited with the plaintiff were part of a definite, authorized issue, and it is not clear that it has sufficient interest as trustee to contest the disposition by the railway company of the remainder, unless the disposition is contrary to the terms of the mortgage securing them, or the terms of the trust agreements under which it acts. The court approves in principle of an active interest by trustees in matters affect-

ing property held in trust for bond and note holders, and, though the ground for action here may not appear very firm, it will be assumed as sufficient. Besides, it is well to consider the effect of the transactions as a whole, because it may be hereafter asserted that, if the Mercantile Trust Company holds to its $800,000 of consolidated bonds, it forfeits its right to share in the additional collateral under the extension agreement.

The plaintiff invokes the rules of a composition between creditors and their debtor which make for equality of advantage and against secret preferences. The mere extension by the Mercantile Trust Company of its short time notes and the renewal of its bank loan did not change its prior position. The debts and security were continued, not then newly created. Any change of right must rest upon the fact that other short time note holders joined in the extension, and in judging that the circumstances of the original transaction should be regarded. The purchase by the Mercantile Trust Company of the short time notes was essentially a loan to the railway company. The agreement that the $800,000 of consolidated bonds should stand as security for the notes was an ordinary banking transaction, valid in every respect. The railway company violated no duty to other short time note holders, or other holders of consolidated bonds. It had a right to give the security, and the Mercantile Trust Company had a right to accept it. The transaction was not in contemplation of insolvency or receivership. About eight months later the Mercantile Trust Company assented to the extension of its notes. In doing so it did not inform the other assenting holders of its special security, but in no other way can it be said there was concealment. Concealment under such circumstances implies a duty to inform, and the duty should have its source in a general consciousness of equity and fair dealing. It is not reasonably conceivable that the officials of the Mercantile Trust Company ever thought of such a duty, or that, had full information been given, it would have changed the course of the others. The security was not given to the Mercantile Trust Company to induce it to participate. It was a fact accomplished before the extension plan arose. No preference or advantage over other participants was given that company as a consideration for its assent, or, in the sense of the doctrine of composition, at the time of or in connection with the extension.

Many cases of composition with unlawful preferences have been cited by counsel, and certain features similar to some in the case at bar are pointed out. But the similarities are those of mere circumstance, and not of the essence of preference in composition. The conclusion is that the sixteenth paragraph of plaintiff's answer, supplemented by the parts of the preceding paragraphs in question, does not state a defense.

The motion will be sustained.